## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

D'Andre I. Alexander,

        Plaintiff,

    v.

1328 Uptown, Inc., Fortney Hospitality
Group, Inc., and Fortney Companies, Inc.,

        Defendants.

Case No. 18-cv-1544 (ECT/ECW)

**ORDER**

This matter is before the Court on Defendants Fortney Hospitality Group, Inc. and Fortney Companies, Inc.'s (collectively, the "Fortney Entities") Motion to Quash Depositions and for Protective Order (Dkt. 38); Defendant 1328 Uptown, Inc.'s ("1328 Uptown" or "Bar Louie") Motion for Protective Order (Dkt. 53); and Plaintiff D'Andre I. Alexander's ("Alexander") Motion to Compel (Dkt. 59). The Court held a hearing on the motions on July 19, 2019, at which counsel presented their arguments. (Dkt. 76, 79.) On July 24, 2019, Alexander filed a letter informing the Court that the disputes had been resolved as to certain interrogatories, requests for admission, and requests for production to 1328 Uptown. (Dkt. 77.) For the reasons stated below, each of the motions are granted in part and denied in part.

## I.    <u>BACKGROUND</u>

Alexander brought this case against Defendants on June 4, 2018, alleging negligence, innkeeper's liability, negligence per se, negligent undertaking, negligent

infliction of emotional distress, and violation of Minn. Stat. § 340A.801 (Minnesota's Dram Shop Act). (Dkt. 1.) The Complaint alleges that Alexander suffered permanent injuries when Eddie Burch, whom 1328 Uptown allegedly overserved alcohol, shot Alexander after an altercation at 1328 Uptown on June 25, 2017.[1] (*Id.* ¶¶ 10-51.) As addressed in this Court's June 20, 2019 Order, the Complaint "does not allege that Fortney Hospitality Group, Inc. or Fortney Companies, Inc. is an alter ego of 1328 Uptown or make any allegations as to piercing the corporate veil."[2] (Dkt. 47 at 2.) Instead, the Complaint alleges that Fortney Hospitality Group is a franchisee of Bar Louie and that "Defendants owned and operated Bar Louie Uptown." (Dkt. 1 ¶¶ 5-6.) According to Fortney Hospitality Group's Rule 7.1 disclosure, Fortney Hospitality Group is the parent corporation of 1328 Uptown. (Dkt. 11.)

In the June 20, 2019 Order, the Court denied in part Alexander's Motion to Modify the Pretrial Scheduling Order (Dkt. 34) to permit Alexander to take discovery regarding piercing 1328 Uptown's corporate veil such that the Fortney Entities could be

---

[1] On or about March 15, 2018, Burch was convicted of a felony of Assault in the First Degree (great bodily harm), Minn. Stat. § 609.221, Subd. 1, and sentenced to ninety-eight (98) months in the Minnesota Department of Corrections facility in St. Cloud. (Dkt. 1 ¶ 50.)

[2] Under Minnesota law, "[a] court may pierce the corporate veil to hold a shareholder liable for the debts of the corporation when the shareholder is the alter ego of the corporation." *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (citing *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979)). Here, because Fortney Hospitality Group is a corporate parent of 1328 Uptown (Dkt. 11) and Fortney Hospitality Group wholly owns Fortney Companies (Dkt. 14), the issue would be whether a court could pierce 1328 Uptown's corporate veil to hold one or both of the Fortney Entities responsible for 1328 Uptown's liabilities arising from the June 25, 2017 incident.

held liable for 1328 Uptown's acts ("veil-piercing discovery") and extend the deadline for amending the pleadings to allege a veil-piercing theory because Alexander had not met the diligence requirement of Rule 16.[3]  (Dkt. 47 at 6-11.)  The Court granted the motion to extend fact discovery to August 15, 2019 as to the depositions of Burch and six of 1328 Uptown's witnesses to which the parties had already stipulated to an extension. (*Id.* at 11.)  No party filed objections to the June 20, 2019 Order under Local Rule 72.2(a).

On April 26, 2019, before Alexander brought his Motion to Modify the Pretrial Scheduling Order, Alexander served deposition notices for Eric Fortney, Marc Fortney, Carol Fortney, Ronald Fortney, and Mary Lin Wershofen on the Fortney Entities.  (Dkt. 50-1, Exs. 3-7.)  The depositions were noticed for several days in May 2019 to take place at the offices of Alexander's counsel in Minneapolis, Minnesota.  (*Id.*)  On May 15, 2019, Alexander served deposition notices of Eric Fortney, Marc Fortney, and Mary Lin Wershofen on 1328 Uptown to take place in La Crosse, Wisconsin on June 10, 2019; May 30, 2019; and May 29, 2019, respectively.  (Dkt. 50-1, Exs. 9-11.)  The Fortney Entities' motion seeks an order quashing these depositions and for a protective order

---

[3]  Alexander did not move to amend his Complaint to add a veil-piercing theory when he brought his Motion to Modify the Pretrial Schedule, and all parties agreed that Alexander had to allege veil-piercing or alter ego in his Complaint to hold the Fortney Entities liable under such a theory.  (Dkt. 47 at 4 n.3, 6 n.4.)

precluding or alternatively limiting veil-piercing discovery, including with respect to certain written discovery served by Alexander.[4]  (Dkt. 38; Dkt. 48 at 10-12.)

On July 3, 2019, 1328 Uptown filed its motion seeking a protective order to limit discovery propounded on it by Alexander, including interrogatories, requests for admission, and requests for production.  (Dkt. 53; Dkt. 55.)  On July 4, 2019, Alexander filed a cross motion to compel as to 1328 Uptown and the Fortney Entities related to his interrogatories, requests for admission, and requests for production.  (Dkt. 59.)

At the July 19, 2019 hearing, Alexander and 1328 Uptown informed the Court that they may have resolved their dispute as to certain discovery.  In his July 24, 2019 letter, Alexander informed the Court that he and 1328 Uptown had resolved their dispute as to Interrogatory No. 7, Request for Admission Nos. 10-12 and 17, and Request for Production No. 16(c).  (Dkt. 77.)  Disputes still remain between them as to Request for Production Nos. 1, 12, 18, and 27-44, Interrogatory Nos. 25-33, and Request for Admission Nos. 2, 5, 7, 9, and 13-16.  (*Id.*)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 sets forth the scope of discovery in general:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the

---

[4]    The Fortney Entities assert that "This Court should quash the subpoenas served on FHG and FC . . . ."  (Dkt. 48 at 5.)  Alexander served deposition notices, not subpoenas, on the Fortney Entities (*id.* at 4-5), and the Court assumes the reference to subpoenas is a typographical error as the Fortney Entities are parties to this action.  The Court construes the "motion to quash" as a motion for protective order with respect to the depositions of Carol Fortney, Marc Fortney, Eric Fortney, Ronald Fortney, and Mary Lin Wershofen.

amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

However, Rule 26(b)(2) provides that a court "may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30." Fed. R. Civ. P. 26(b)(2)(A). "By order or local rule, the court may also limit the number of requests under Rule 36." *Id.* In addition, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

When a party seeks a protective order, "[t]he court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense, including one or more of the following . . . (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ." Fed. R. Civ. P. 26(c)(1). The burden is on the movant to show the "good cause" required for issuance of the protective order. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). "To make this showing, the moving party cannot rely on broad or conclusory allegations of harm." *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 757 (D.

Minn. 2008) (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n.16 (1981)). "However, 'a showing of irrelevancy of proposed discovery can satisfy the "good cause" requirement of Rule 26(c).'" *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) (quoting *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994)). "Information is generally discoverable 'unless it is clear that the information sought has no bearing upon the subject matter of the action.'" *Id.* (quoting *Sinco, Inc. v. B & O Mfg., Inc.*, Civ. No. 03-5277, 2005 WL 1432202, at *1 (D. Minn. May 23, 2005)). The Eighth Circuit has held, nonetheless, that the proponent of the discovery must make a "threshold showing of relevance . . . before parties are required to open wide the doors of discovery," in order to limit "fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Federal Rule of Civil Procedure 37 provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). In particular, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). A district court's rulings on discovery matters are reviewed by the Eighth Circuit under an abuse of discretion standard. *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1202 (8th Cir. 2015) (citing *Harvey v. Schoen*, 245 F.3d 718, 720-21 (8th Cir. 2001)).

# III.   DISCUSSION

## A.   Scope of Discovery

Before turning to the specific issues set forth in the motions before the Court, the Court first addresses the scope of discovery under Rule 26(b)(1) and the elements of certain of Alexander's claims, as they underpin most of the parties' arguments with respect to the pending motions.

As a preliminary matter, the Court addresses Alexander's misstatement of the scope of discovery under Rule 26(b)(1).  Under the current version of Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1). Alexander, however, relies on the pre-2015 version of Rule 26 and cases interpreting pre-2015 versions of Rule 26 in his briefs.  (*E.g.*, Dkt. 64 at 4 (stating: "Under Federal Rule of Civil Procedure 26(b)(1), Plaintiff is entitled to discovery of 'any matter, not privileged, which is relevant to the subject matter involved in the pending action.'"); Dkt. 71 at 6 ("The general scope of discovery, under Fed. R. Civ. P. 26(b)(1), 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).)  In his opposition to 1328 Uptown's motion for protective order, Alexander did correctly state the current standard under Rule 26(b)(1), but continued to rely on cases interpreting pre-2015 versions of Rule 26.  (*See* Dkt. 74 at 2.)  Some courts have found that "[i]n light of the fact that Rule 26(b)(1) now limits discovery to information relevant to 'claims and

defenses and proportional to the needs of the case,' the *Oppenheimer Fund* definition, like the version of Rule 26(b)(1) that preceded the 2015 amendments, is now relegated only to historical significance." *San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, Case No. 15cv1401-BEN-MDD, 2017 WL 3877731, at *1 (S.D. Cal. Sept. 5, 2017). Here, the Court applies the current version of Rule 26 to the disputed issues (as it must) and considers the effect of the 2015 amendment to Rule 26 on pre-2015 cases when making its rulings.

Next, the Court addresses Alexander's arguments regarding relevance to the extent they are based on the elements of an innkeeper's liability claim as set forth in *Henson v. Uptown Drink, LLC*, 922 N.W.2d 185 (Minn. 2019), his claim under Minnesota's Dram Shop Act, and Section 317 of the Restatement (Second) of Torts.[5]

First, relying on *Henson*, Alexander repeatedly asserts that certain discovery is relevant to his innkeeper's liability claim because the information he seeks is probative of the "notice" element of his innkeeper's liability claim and thus the foreseeability of Alexander's injury. (*E.g.*, Dkt. 64 at 8-9, 11, 21, 29-30; Dkt. 71 at 7-8; Dkt. 74 at 3-4.) *Henson* provides: "There are four elements to a claim of innkeeper negligence: (1) notice of the offending party's 'vicious or dangerous propensities' by 'some act or threat,' (2) adequate opportunity for the innkeeper to protect the injured patron, (3) failure on the part of the innkeeper to take reasonable steps to do so, and (4) foreseeable injury." 922

---

[5] Although Alexander references "negligent security" in his briefing (*e.g.*, Dkt. 64 at 30), his counsel conceded at the hearing that "negligent security" is not a cognizable claim on its own, which was why he pleaded it as part of the innkeeper's liability claim.

N.W.2d at 190 (citing *Boone v. Martinez*, 567 N.W.2d 508, 510 (Minn. 1997)). "[W]hen the totality of the facts and circumstances put the innkeeper on notice, [the Minnesota Supreme Court has] held that there was a duty based on foreseeability." *Id.* at 192.

Alexander frames the "foreseeability" at issue for his innkeeper's liability claim as "[t]he foreseeability of one of 1328's patrons injuring another patron . . . ." (Dkt. 64 at 8; *see also id.* at 28 (arguing that he is entitled to know "whether Defendants were on notice of potential injuries to its patrons prior to the incident").) In other words, Alexander generalizes "foreseeability" to encompass the foreseeability that any patron might be injured by another patron, not that Burch might injure Alexander. He then contends that much of his discovery—including discovery into past incidents of violence at 1328 Uptown, historical employee training and security operations, the ratio of food to alcohol sales, and whether 1328 Uptown was sufficiently capitalized and funded—is relevant to foreseeability because the notice determination is based on the "totality of the facts and circumstances." (*E.g.*, Dkt. 64 at 11, 16; Dkt. 74 at 4; Dkt. 71 at 8.) Defendants respond that the "foreseeability" at issue in *Henson* is the foreseeability of Burch's conduct on the night of June 25-26, 2017, and whether it would cause injury to Alexander, not the generalized "foreseeability" asserted by Alexander. (*See, e.g.*, Dkt. 65 at 7.)

*Henson* does not support Alexander's generalized view of "foreseeability." It is clear in *Henson* that the "notice" that would lead to a duty based on foreseeability is the "notice of **the offending party's** vicious or dangerous propensities by some act or threat." 922 N.W.2d at 190 (emphasis added and quotation marks omitted); *see also Minks v. Cherry*, No. A06-1166, 2007 WL 1053501, at *2 (Minn. Ct. App. Apr. 10,

2007) ("A prerequisite to foreseeability of injury is notice. If the court concludes that the bar owner had **no notice of the person's violent tendencies**, then the court must find that no duty to protect existed, because the assault would not have been foreseeable to a reasonable bar owner.") (emphasis added) (citing *Alholm v. Wilt*, 394 N.W.2d 488, 491 n.5 (Minn. 1986)). In *Henson*, that analysis of the "totality of the facts and circumstances" that might have put the innkeeper on notice and result in a duty based on foreseeability focused on the offending party's conduct. *See* 922 N.W.2d at 192-93. While this does not render all discovery irrelevant unless it is focused solely on Burch's conduct, the Court considers the parties' arguments regarding relevance and proportionality in the context of whether 1328 Uptown had notice of Burch's tendencies and propensities.

Second, Alexander argues that his discovery directed to employee training and service decisions is relevant to his dram shop claim. For example, he asserts that "the training that was in place [at 1328 Uptown], who developed the training methods and materials, and who approved the same" are relevant to his dram shop claim. (Dkt. 64 at 33; *see* Dkt. 71 at 10 (arguing "the necessity and opportunity to control its 1328 bartenders' alcohol service decisions" is relevant to dram shop claim); Dkt. 74 at 8 ("1328's bar had been sued in the past for violating the Dram Shop Act, thus it should have known of the necessity of controlling its bartenders' alcohol service decisions, by allocating resources to training its bartenders on safe alcohol service").) Minnesota's Dram Shop Act requires a plaintiff to "first prove that the sale of alcohol was illegal under Minn. Stat. ch. 340A" and also "show by competent proof that the illegal sale of

alcohol caused or contributed to the intoxication and was a proximate cause of the plaintiff's injuries." *Henson*, 922 N.W.2d at 190 (cleaned up).  Here, the relevant portion of Minnesota Statutes chapter 340A provides: "No person may sell, give, furnish, or in any way procure for another alcoholic beverages for the use of an obviously intoxicated person."  Minn. Stat. § 340A.502.  Employee training and control of alcohol service decisions are not elements of his dram shop claim, and Alexander has not cited any case where those factors were considered when determining whether a patron was "obviously intoxicated" or in the context of a dram shop claim.  Further, the Dram Shop Act imposes strict liability on a defendant bar owner, *Hannah v. Jensen*, 298 N.W.2d 52, 54 (Minn. 1980), "without regard to fault in the sense of any wrongful intent or negligent conduct" *Heveron v. Vill. of Belgrade*, 181 N.W.2d 692, 695 (Minn. 1970) (cleaned up).  The Court views Alexander's relevance and proportionality arguments through the lens of the claim's elements, not through Alexander's proposed training and control lens.

Third, Alexander relies on the Restatement (Second) of Torts § 317 to support his relevance arguments.  (*E.g.*, Dkt. 71 at 3; Dkt. 74 at 3.)  Section 317 provides that under certain circumstances, "A master is under a duty to exercise reasonable care so to control his servant **while acting outside the scope of his employment** as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them."  Restatement (Second) of Torts § 317 (1965) (emphasis added).  According to Alexander, "[a] fact of consequence in establishing an employer's duty to control its employees is whether the employer knew or should have known of the necessity and opportunity for exercising such control."  (Dkt. 71 at 8.)  At the hearing,

1328 Uptown argued that § 317 was inapplicable because it has not raised as a defense that any of its employees were acting outside of the scope of their employment.

Comment A to § 317 provides in part: "The rule stated in this Section is applicable only when the servant is acting outside the scope of his employment." Restatement (Second) of Torts § 317, cmt. A. Because no defendant has raised the defense that any 1328 Uptown employee was acting outside of the scope of their employment, § 317 does not provide a sound basis for relevance arguments.

Having addressed these issues, the Court turns to the specific motions.

**B.     The Fortney Entities' Motion to Quash Depositions and for Protective Order**

The Fortney Entities seek to quash the deposition notices of Eric Fortney, Marc Fortney, Carol Fortney, Ronald Fortney, and Mary Lin Wershofen. (Dkt. 48 at 1.) They also seek a protective order precluding Alexander from engaging in any veil-piercing discovery. (*Id.*)

The Court first considers the Fortney Entities' motion to quash depositions. The Fortney Entities contend that the deposition notices should be quashed because Alexander did not allege a veil-piercing theory in his Complaint and the Court has denied Alexander's motion for an extension of time to conduct veil-piercing discovery and to amend his Complaint to add a veil-piercing theory. (*Id.* at 5-9.) Alexander responds that the individuals whose depositions were noticed are relevant to his claims against Defendants for their roles in the management and operation of 1328 Uptown for several reasons. (Dkt. 71 at 1.) First, Marc Fortney is the President of 1328 Uptown and Fortney Hospitality Group; Eric Fortney, Marc Fortney, Carol Fortney, and Ronald Fortney hold

director/officer positions at Fortney Hospitality Group; and Marc Fortney and Eric Fortney are listed as officers/directors of 1328 Uptown, as sources of experience for 1328 Uptown, and as "owners" in manuals provided to 1328 Uptown employees. (Dkt. 71 at 2-3; *see also* Dkt. 72-1, Ex. 34 at 63, 65; Dkt. 36-2, Ex. 2 at 1; Dkt. 36-5, Exs. 4, 5 ; Dkt. 36-7, Ex. 7 at 4.)[6] Second, 1328 Uptown identified Eric Fortney, Marc Fortney, and Mary Lin Wershofen as persons likely to have discoverable information in their Initial Disclosures. (Dkt. 71 at 9; *see also* Dkt. 72-2, Ex. 35 at 1.) Third, Mary Lin Wershofen, who verified 1328 Uptown's and the Fortney Entities interrogatory responses, is the Fortney Entities Manager of Human Resources (Dkt. 71 at 11-12; *see also* Dkt. 61-3, Ex. 14 at 24; Ex. 61-4 at 2, 14, Ex. 15 at 2, 14), and has received at least one email in the past from 1328 Uptown regarding a fight at that establishment that resulted in the police being called (*see* Dkt. 36-8, Ex. 8). Fourth, Alexander argues that Carol Fortney is Fortney Hospitality Group's treasurer and was identified by the Fortney Entities in their Initial Disclosures as someone who "may have discoverable information regarding FHG and [FC's] defense that they are not proper defendants in this action, also knowledge of the corporate ownership of named Defendants." (Dkt. 71 at 10-11; *see* Dkt. 72-3, Ex. 36 at 3.)

The Fortney Entities have repeatedly asserted their intention to seek their dismissal from this case, including at the Rule 16 conference and in connection with

---

[6] The employee manual cited by Alexander does not refer to Eric Fortney and Marc Fortney as "owners" (*see* Dkt. 36-5, Ex. 5), but Eric Fortney and Mark Fortney gave the "Welcome!" message on behalf of Fortney Hospitality Group in the "Bartender Manual" that pertained to Bar Louie (Dkt. 36-4, Ex. 4 at 3, 4).

Alexander's Motion to Modify the Pretrial Scheduling Order. (*See, e.g.*, Dkt. 40 at 9.) However, they had not sought dismissal when these motions were brought and remain named defendants in this case. (Dkt. 48 at 9 & n.2; Dkt. 66 at 4 n.2.) The Court is cognizant that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (citations omitted). Further, several of the noticed individuals have officer/director/managerial roles at 1328 Uptown as well as at the Fortney Entities and were identified in 1328 Uptown's or the Fortney Entities' initial disclosures as persons having knowledge they may use to support their claims or defenses in this action. However, at the June 14, 2019 hearing on Alexander's Motion to Modify the Pretrial Scheduling Order, when the Court asked counsel for Alexander what issues the depositions that were the subject of the motion to quash were relevant to, counsel responded that the depositions were "almost substantially oriented toward piercing." (June 14, 2019 Hr. at 11:22:45 a.m. – 11:23:14 a.m.) Thus, the purpose of these depositions—whether in the individuals' capacity at the Fortney Entities or at 1328 Uptown—appears mainly directed to a veil-piercing claim that is not pleaded in the Complaint. Further, this Court has already denied Alexander's motion seeking an extension of the pretrial schedule to permit veil-piercing discovery with the goal of amending his Complaint to add a veil-piercing theory due to lack of diligence. (*See generally* Dkt. 47.)

Taking all of these factors into consideration, the Court will deny the Fortney Entities' motion to quash in part and grant the motion in part. The Court denies the

motion as to Eric Fortney, Marc Fortney, Carol Fortney, and Mary Lin Wershofen for the following reasons:  Not only are Eric Fortney and Marc Fortney officers/directors of Fortney Hospitality Group, but Alexander has sufficiently shown some involvement with 1328 Uptown, either in their roles as officers/directors at a Fortney Entity or as officers/directors of 1328 Uptown.  Mary Lin Wershofen is the Human Resources Manager at the Fortney Entities, verified their interrogatory responses, and has received at least one email in the past from 1328 Uptown regarding a fight at that establishment that resulted in the police being called.  Moreover, 1328 Uptown identified Eric Fortney, Marc Fortney, and Mary Lin Wershofen as persons likely to have discoverable information in their Initial Disclosures.  Finally, Carol Fortney is the treasurer of Fortney Hospitality Group and was identified in the Fortney Entities' Initial Disclosures as a person who may have information to support their defenses in this action, specifically regarding the Fortney Entities' defense that they are not proper defendants in this action. As the Fortney Entities intend to seek dismissal on the grounds that they are not proper defendants in this action, Alexander is entitled to depose the witnesses they identified as having information that may support that defense.

However, the Court will grant the motion as to Ronald Fortney.  The only explanation Alexander provided for his deposition is that he is an owner and officer/director of Fortney Hospitality Group and he (along with Eric Fortney and Marc Fortney) was previously sued in a franchise dispute involving 1328 Uptown.  (Dkt. 71 at 3, 9-10.)  Alexander has not identified any information Ronald Fortney may have that is relevant to an issue in this case and that would not be cumulative or duplicative of

information held by Eric Fortney or Marc Fortney.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  If,

after Alexander has completed the permitted depositions, he is able to identify specific

information relating to the claims and defenses in this action in the possession of Ronald

Fortney that was not in the possession of other deponents, he may seek leave of Court to

depose Ronald Fortney.  Accordingly, the Court grants in part and denies in part the

Fortney Entities' Motion to Quash (Dkt. 38).  Only one deposition of each of those

witnesses shall be permitted.  *See* Fed. R. Civ. P. 30(a)(2)(A)(ii).  Finally, as Alexander

agreed that the depositions may take place in La Crosse, Wisconsin (Dkt. 71 at 14), the

Fortney Entities' objections based on the noticed location are now moot.  Alexander has

six weeks from the date of this Order to conduct those depositions, and eight weeks from

the date of this Order to seek leave to depose Ronald Fortney.

The Fortney Entities also seek a protective order "limiting and precluding Plaintiff

from engaging in discovery aimed at piercing the corporate veil of any of the corporate

defendants."  (Dkt. 48 at 1.)  It is undisputed that the operative Complaint does not allege

a veil-piercing theory, and the Court denied Alexander's Motion to Modify the Pretrial

Scheduling Order to permit veil-piercing discovery with the goal of amending the

Complaint to allege veil-piercing.  (Dkt. 37.)  Thus, veil-piercing discovery is not

relevant to any claim or defense in this action, and that lack of relevance satisfies the

"good cause" requirement of Rule 26(c).  *See Shukh*, 295 F.R.D. at 237; *see also* Fed. R.

Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case.");

*Misc. Dkt. Matter No. 1 v. Misc. Dkt. Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999)

(citing Fed. R. Civ. P. 26(b)(1)) ("The district court correctly recognized that discovery may not be had on matters irrelevant to the subject matter involved in the pending action . . . ."). The Court therefore grants the Fortney Entities' motion for a protective order precluding veil-piercing discovery.

Accordingly, consistent with the June 20, 2019 Order denying Alexander's Motion to Modify the Pretrial Scheduling Order, Alexander's examination of Eric Fortney, Marc Fortney, Carol Fortney, and Mary Lin Wershofen shall not include questions directed to veil-piercing. In taking and defending these depositions, counsel should be guided as to relevance and proportionality by the Court's rulings on written discovery in this Order. The Court addresses which of Alexander's written discovery is precluded by this ruling below.

## C.     Alexander's Written Discovery to the Fortney Entities

Alexander moves to compel with respect to the following discovery served on the Fortney Entities: (1) Interrogatory Nos. 4-30[7]; (2) Request for Production Nos. 2, 5-30, 32; and (3) Request for Admissions Nos. 1-14. (Dkt. 64 at 26.) Because the discovery served on each Fortney Entity is identical except for the entity's name (*compare* Dkt. 61-4, *with* Dkt. 61-5; *compare* Dkt. 61-6, Ex. 17, *with* Dkt. 61-7, Ex. 18; *compare* Dkt. 61-14, Ex. 25, *with* Dkt. 61-15, Ex. 26), and the parties did not distinguish between the

---

[7]     Alexander stated the Fortney Entities had not provided responses to Interrogatory Nos. 1-35 on page 26 of his brief, but he appears to have only served 30 interrogatories on the Fortney Entities. (*See* Dkt. 64 at 26, 28.)

discovery served on each Fortney Entity in their briefs, the Court does the same in this Order. The Court addresses each set of discovery below.

**1. Interrogatories**

Alexander moves to compel the Fortney Entities to respond to Interrogatory Nos. 4-30. The Court reproduces each interrogatory below.

### Interrogatory No. 4

For each person who presently owns stock in [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], state:

(a) their full name, home address, home telephone number, as well as each business address and each business telephone number.

(b) the date(s) upon which the person acquired their shares.

(c) the consideration paid or promised for the shares and the date(s) on which it was paid or promised.

(d) the number of shares owned and the percentage of shares owned as measured against the total outstanding shares of the corporation.

(e) whether the person is related by blood or marriage to any other person who is or has been a shareholder, officer, or director of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] and, if so, the identity of the other person and the nature of the relationship.

### Interrogatory No. 5

Excluding those identified in your answer to the previous Interrogatory, identify each person who has owned stock in [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] at any time during the past five years prior to the incident and for each such person, state:

(a) their full name, home address, home telephone number, as well as each business address and each business telephone number.

(b) the date(s) upon which the person acquired their shares.

(c) the consideration paid or promised for the shares and the date(s) on which it was paid or promised.

(d) the date(s) upon which the person transferred their shares and the identity of the transferee, including their full name, home address, home telephone number, as well as each business address and each business telephone number.

(e) the number of shares owned and the percentage of shares owned as measured against the total outstanding shares of the corporation.

(f) whether the person is related by blood or marriage to any other person who is or has been a shareholder, officer, or director of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] and, if so, the identity of the other person and the nature of the relationship.

## Interrogatory No. 6

Summarize how [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] was capitalized upon its incorporation, including:

(a) the identity of each person or entity who purchased or subscribed to stock in [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

(b) the number of shares purchased or subscribed by each such person or entity.

(c) the amount paid or promised for the shares purchased or subscribed by each such person or entity and the date(s) of each such payment.

## Interrogatory No. 7

Identify each person who has served as an officer, director and/or management-level employee of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] at any time during the past five years prior to the incident and for each such person, state:

(a) their full name, home address, home telephone number, as well as each business address and each business telephone

number.

(b) the office(s) or position(s) held and the applicable dates.

(c) the salary, benefits, and any other compensation paid to the person during each of the past five years.

## **Interrogatory No. 8**

Identify any actual stock certificates issued by [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] to any shareholder and whether [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] paid any dividends to stockholders during the past five years. If so, state:

(a) the identity of each person to whom certificates were issued. (b) the dates on which the certificates were issued.

(c) the identity of each shareholder receiving a dividend. (d) the dates on which the dividends were paid.

(e) the amount of the dividends.

(f) how the dividends were paid.

## **Interrogatory No. 9**

Has any shareholder, officer, or director of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] ever loaned money to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]? If so, for each such loan, state:

(a) the identity of the person making the loan.

(b) the date of the loan.

(c) the amount of the loan.

(d) whether there was a written loan agreement, promissory note, or similar document.

(e) the date and amount of each payment that [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] made on the loan.

(f) the interest rate, if any.

(g) the balance still owed by [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], if any.

## **Interrogatory No. 10**

Has [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] ever loaned money to any shareholder, officer, or director of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]? If so, for each such loan, state:

(a) the identity of the person to whom the loan was made.

(b) the date of the loan.

(c) the amount of the loan.

(d) whether there was a written loan agreement, promissory note, or similar document.

(e) the date and amount of each payment that the borrower has made to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] on the loan.

(f) the interest rate, if any.

(g) the balance still owed to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], if any.

## **Interrogatory No. 11**

Excluding those people identified in your answer to the previous Interrogatory, has [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] ever loaned money to any other person or entity? If so, for each such loan, state:

(a) the identity of the person or entity to whom the loan was made.

(b) the date of the loan.

 (c) the amount of the loan.

(d) whether there was a written loan agreement, promissory note, or similar document.

(e) the date and amount of each payment that the borrower

has made to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] on the loan.

(f) the interest rate, if any.

(g) the balance still owed to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], if any.

## Interrogatory No. 12

Did [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] ever advance funds to any shareholder, officer, employee, or director for services to be performed later? If so, for each such advance, state:

(a) the identity of the person to whom the funds were advanced.

(b) the date of the advance.

(c) the amount of the advance.

(d) the services to be performed, whether they were performed and when they were performed.

## Interrogatory No. 13

Did any person or entity ever guaranty or cosign any obligation of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]? If so, for each such action, state:

(a) the identity of the person or entity, including their home address, home telephone number, business address, and business telephone.

(b) the identity of the creditor or lender, including their business address and business telephone number.

(c) the nature of the obligation and the total amount of the obligation.

(d) the date on which the person or entity guaranteed or cosigned the obligation.

## Interrogatory No. 14

Did [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] ever

guaranty or cosign the obligations of any other person or entity? If so, for each such action, state:

> (a) the identity of the person or entity for whom [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] guaranteed or cosigned on the obligation, including their home address, home telephone number, business address, and business telephone.

> (b) the identity of the lender, including their business address and business telephone number.

> (c) the nature and amount of the obligation.

> (d) the date on which [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] guaranteed or cosigned the obligation.

> (e) Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s reasons for guaranteeing or cosigning the obligation.

## Interrogatory No. 15

Does [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] now maintain, or has it within the past five years prior to the incident maintained, any bank accounts? If so, for each such account, state:

> (a) the identity of the financial institution at which the account is or was maintained, including the business address and business telephone number of the institution.

>  (b) the account numbers.

> (c) the date the account was opened.

> (d) the date the account was closed, if applicable.

> (e) the identity of each person authorized to sign checks or access the account on behalf of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

> (f) the current balance in the account.

## Interrogatory No. 16

With regard to [Fortney Companies, Inc./Fortney Hospitality Group,

Inc.], have there been any shareholder meetings during the past five years? If so, for each such meeting, state:

    (a) the date, time, and location of the meeting.

    (b) the identity of each person in attendance at the meeting.

## Interrogatory No. 17

With regard to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], have there been any meetings of the Board of Directors during the past five years prior to the incident? If so, for each such meeting, state:

    (a) the date, time, and location of the meeting.

    (b) the identity of each person in attendance at the meeting.

## Interrogatory No. 18

Has [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] made gifts to any person or entity during the past five years? If so, for each such gift, state:

    (a) the identity of the recipient.

    (b) whether it was a monetary gift or a gift of some other property and a brief description of what was given.

    (c) the date of the gift.

    (d) Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s reasons for making the gift.

## Interrogatory No. 19

During the past five years prior to the incident, has [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] forgiven any debts owed to it? If so, for each such debt, state:

    (a) the identity of the person or entity indebted to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

    (b) the amount of the debt.

    (c) the amount of debt forgiven.

(d) the date on which the debt was forgiven.

(e) Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s reasons for forgiving the debt.

## Interrogatory No. 20

Does [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] own or lease any real property? If so, for each parcel of property, state:

(a) the address of the property.

(b) whether the property is owned or leased.

(c) the date that the property was purchased or leased.

## Interrogatory No. 21

With regard to the claim(s) which are the subject of this action, state the date on which Fortney Companies, Inc. first learned facts indicating the Plaintiff might have a cause of action against [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], what facts [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] learned, and how [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] learned those facts.

## Interrogatory No. 22

At any time subsequent to the date(s) identified in Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s answer to the previous Interrogatory, did [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] transfer funds, assets, or property of any kind to any person or entity outside the ordinary course of business or prepay any anticipated expenses? If so, for each such action, state:

(a) the identity of the transferee, including their full name, business address, and each business telephone number.

(b) the date of the transfer.

(c) a brief description of what was transferred, its value, and the consideration, if any.

(d) Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s reasons for the transfer.

**Interrogatory No. 23**

Is [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] a Subchapter S corporation? If so, state the date on which the Subchapter S election was filed with the Internal Revenue Service.

**Interrogatory No. 24**

If [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] is not a Subchapter S corporation, has [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] filed federal tax returns during any of the past five years? If so, for each such return, state:

> (a) the identity of the person who prepared the return, including their business address and business telephone number.

> (b) the taxable income of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] as shown on the return.

**Interrogatory No. 25**

During the past five years prior to the incident, has any person prepared a balance sheet, income (profit and loss) statement, cash statement, or annual report concerning Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s financial activities? If so, for each such person, state:

> (a) the identity of the person, including their business address and business telephone number.

> (b) the documents prepared by the person and the dates on which they were prepared.

> (c) the current location of the documents and the identity of the person with custody of them.

**Interrogatory No. 26**

Has Fortney Companies, Inc. ever been sued? If so, for each such action, state:

> (a) the identity of the plaintiff, including their full name, home address, home telephone number, as well as each business address and each business telephone number.

(b) the identity and address of the court in which the suit was filed.

(c) the case number.

(d) the general nature of the allegations against [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] and the relief requested.

(e) the name, business address, and business telephone number of the plaintiff's attorney.

(f) the outcome of the suit.

## Interrogatory No. 27

Is [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] self-insured under any statute for the damages claimed by the Plaintiff? If so, specify the statute(s), whether [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] was required to post a bond, the identity of any company which issued a bond, and the address of any such company.

## Interrogatory No. 28

For each factual denial set forth in Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s Answer to the Plaintiff's Complaint, state in detail all facts upon which [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] bases such denial; the name, home address, home telephone number, business address, and business telephone number of all witnesses to those facts; and, the identity of all documents supporting such facts.

## Interrogatory No. 29

For each affirmative defense set forth in Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s Answer to the Plaintiffs Complaint, state in detail all facts upon which [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] bases such defense, the name, home address, home telephone number, business address, and business telephone number of all witnesses to those facts and the identity of all documents supporting such facts.

**Interrogatory No. 30**

State the name, home address, home telephone number, business address, and business telephone number of each person who has given [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] a written or recorded statement concerning any aspect of this case.

The Court first considers Interrogatory Nos. 4-8. The Fortney Entities objected to these interrogatories on the grounds that they are overly broad, irrelevant to the claims asserted in the Complaint, and not reasonably calculated to lead to the discovery of admissible evidence, as well as on proportionality grounds. (Dkt. 61-4, Ex. 15; Dkt. 61-5, Ex. 16.)

Alexander contends these interrogatories would provide him with information on the relationship between the Fortney Entities and 1328 Uptown, as well as the individuals who have discoverable information about who makes decisions regarding the business practices at 1328 Uptown. (Dkt. 64 at 26.) Alexander also generally argues: "Even regardless of piercing, a permanently disabled patron of a restaurant bringing forth dram shop, negligence, negli[g]ence per se and innkeeper's liability claims is entitled to know who ran the establishment, who made decisions regarding the security in the establishment, and whether Defendants were on notice of potential injuries to its patrons prior to the incident." (Dkt. 64 at 28.) However, the "establishment" at issue is 1328 Uptown, and those interrogatories do not seek information about 1328 Uptown. Rather, they seek information about the stock ownership, capitalization, dividends, and officers/directors of the Fortney Entities.

Alexander has not given any plausible explanation of how the stock ownership and capitalization of the Fortney Entities are relevant to his negligence, innkeeper's liability, negligence per se, negligent undertaking, negligent infliction of emotional distress, and dram shop claims or to any defenses in this case. Consequently, the Court sustains the Fortney Entities' objections to Interrogatory Nos. 4, 5, 6, and 8 on the grounds that the information they seek is not relevant to a claim or defense in this action. *See* Fed. R. Civ. P. 26(b)(1); *Hofer*, 981 F.2d at 380 ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."). Further, even if the information sought by those interrogatories had some relevance to the claims and defenses in this case, the importance of this discovery in resolving the issues in this case is marginal at best. The Court therefore sustains the objections on proportionality grounds as well. *See* Fed. R. Civ. P. 26(b)(1). Alexander's motion to compel is denied and the Fortney Entities' motion for protective order is granted with respect to Interrogatory Nos. 4, 5, 6, and 8.[8]

However, the Court overrules in part the Fortney Entities' objections to Interrogatory No. 7, which seeks information about officers, directors, and management-

---

[8] Alexander stated in his brief that he later amended Interrogatory Nos. 4 and 7 in an attempt to tailor them. (Dkt. 64 at 26.) Specifically, he amended Interrogatory No. 4 to ask whether the stockholders were related to a shareholder, officer, or director of 1328 Uptown (rather than a Fortney Entity) and amended Interrogatory No. 7 to seek the requested information for officers, directors, and/or management-level employees of Fortney Entities who were also serving in one of those roles at 1328 Uptown in the past five years. (Dkt. 61-8, Ex. 19 at 3.) Setting aside whether such amendments are proper, the amendments do not cure the lack of relevance of Interrogatory No. 4.

level employees of the Fortney Entities. The Fortney Entities are defendants in this action, and, as discussed above, Alexander has shown at this stage that officers, directors, and management-level employees of the Fortney Entities may have some involvement in the operation of 1328 Uptown. This portion of this interrogatory directed to the identification of officers, directors, and managers of the Fortney Entities for the past five years is not plainly directed to veil-piercing, overly intrusive, or disproportionate to the issues in the case. Moreover, the identification may provide context for documents produced in this case. Alexander's motion to compel is granted in part and the Fortney Entities' motion for protective order is denied in part with respect to Interrogatory No. 7. The Fortney Entities shall serve a response to Interrogatory No. 7 that identifies by name each person who has served as an officer, director, or management-level employee within the five years preceding June 25, 2017, states the person's office(s) or position(s) held, and states how long that person had been in their office or position within 14 days of the date of this Order. The Fortney Entities need not provide any contact information for those persons or their salary, benefits, or any other compensation paid.

The Court next considers Interrogatory Nos. 9-20 and 22-25. The Fortney Entities objected to these interrogatories on the grounds that they are overly broad, irrelevant to the claims asserted in the Complaint, and not reasonably calculated to lead to the discovery of admissible evidence, as well as on proportionality grounds. (Dkt. 61-4, Ex. 15; Dkt. 61-5, Ex. 16.) The Fortney Entities also made subparts objections to these interrogatories. (Dkt. 61-4, Ex. 15; Dkt. 61-5, Ex. 16.) Alexander did not explain how these interrogatories, which seek detailed information about the Fortney Entities'

financials (including loans, guarantees made, payments made, advances made, gifts, debts, assets, and bank accounts) as well as about shareholders' and Board of Directors' meetings, are relevant to an issue or defense in this case. Instead, Alexander argued that the Court had not made a ruling on whether questions relating to piercing the corporate veil would be permitted. (Dkt. 64 at 28.) As discussed above, piercing the corporate veil of 1328 Uptown such that the Fortney Entities can be held liable for its acts is not alleged in the Complaint, and the Court has denied Alexander's Motion to Modify the Pretrial Scheduling Order to permit veil-piercing discovery and subsequently amend the Complaint.[9] (Dkt. 47.) The Court thus sustains the Fortney Entities' objections to Interrogatory Nos. 9-20 and 22-25 on the grounds that the information they seek is not relevant to a claim or defense in this action and on proportionality grounds. *See* Fed. R. Civ. P. 26(b)(1); *Hofer*, 981 F.2d at 380. Alexander's motion to compel is denied and the Fortney Entities' motion for protective order is granted with respect to Interrogatory Nos. 9-20 and 22-25.

The Court next considers Interrogatory No. 21 (directed to the Fortney Entities' first knowledge of Alexander's claim), Interrogatory No. 26 (all lawsuits against the Fortney Entities), Interrogatory No. 27 (self-insurance), Interrogatory No. 28 (denials),

---

[9] The Court notes that the information sought by these interrogatories does not appear relevant to piercing **1328 Uptown's** corporate veil. Rather, by seeking information about whether Fortney Entities' capitalization, observance of corporate formalities, payment of dividends, and corporate records, the interrogatories appear to seek information to support piercing the **Fortney Entities'** corporate veil. *See Victoria Elevator*, 283 N.W.2d at 512 (identifying factors relating to corporation whose veil was sought to be pierced).

Interrogatory No. 29 (affirmative defenses), and Interrogatory No. 30 (identification of persons who have given statements concerning the case). The Fortney Entities objected to these interrogatories on subparts grounds. (Dkt. 61-4, Ex. 15; Dkt. 61-5, Ex. 16.)

The Court considers Interrogatory No. 26. The Fortney Entities objected to Interrogatory No. 26 as overly broad, irrelevant to the claims asserted in the Complaint, and not reasonably calculated to lead to the discovery of admissible evidence, as well as on proportionality grounds. (Dkt. 61-4, Ex. 15; Dkt. 61-5, Ex. 16.) This interrogatory asks the Fortney Entities to state, for each time they have been sued, (a) the identity of the plaintiff, including their full name, home address, home telephone number, as well as each business address and each business telephone number; (b) the identity and address of the court in which the suit was filed; (c) the case number; (d) the general nature of the allegations against the Fortney Entities and the relief requested; (e) the name, business address, and business telephone number of the plaintiff's attorney; and (f) the outcome of the suit. The interrogatory is not limited by the type of action brought against the Fortney Entities or time frame, and Alexander does not explain how their litigation histories are relevant to the claims in this case. In any event, to the extent such information is relevant, the burden and expense of responding to this interrogatory outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). The Court sustains the Fortney Entities' objections on relevance and proportionality grounds, denies Alexander's motion to compel, and grants the Fortney Entities' motion for protective order with respect to Interrogatory No. 26.

With respect to the subparts objections, "interrogatory subparts are to be counted as part of but one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." *Henschen & Assocs., LLC v. Am. Portfolios Fin. Servs., Inc.*, No. CV 10-3590 (SRN/JSM), 2012 WL 13027961, at *5 (D. Minn. Apr. 9, 2012); *see also Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997). As explained in *Kendell*:

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related.

174 F.R.D. at 685-86.

The Fortney Entities did not take any position as to how many subparts they believe Interrogatory Nos. 21, 26, 27, 28, 29, and 30 contain.[10] However, because Interrogatory Nos. 28 and 29 so plainly contain numerous discrete subparts, the Court finds that Alexander exceeded his limit of 35 interrogatories even if the Court counts Interrogatory Nos. 1, 2, 3, and 7 as a single interrogatory each and excludes Interrogatory Nos. 4-6, 8-20, and 22-26 from its calculations because the Court has sustained the objections as to those interrogatories. Interrogatory No. 28 asks the Fortney Entities to, "for each factual denial" in their Answer, "state in detail all facts upon which Fortney

---

[10] The Fortney Entities did state their belief that Interrogatory No. 1 includes two subparts, Interrogatory No. 2 includes two subparts, Interrogatory No. 3 has one subpart, and Interrogatory No. 7 has three subparts. (Dkt. 66 at 9-13.)

Companies, Inc. bases such denial; the name, home address, home telephone number, business address, and business telephone number of all witnesses to those facts; and, the identity of all documents supporting such facts" for each denial in the Fortney Entities' Answer. The Court counted over 50 statements of "Answering Defendants deny" in the Fortney Entities' Answer. (*See generally* Dkt. 13.) Serving a single interrogatory seeking "all facts upon which [the Fortney Entities] base such denial" for over 50 denials amounts to over 50 interrogatories. *See Wildearth Guardians v. Pub. Serv. Co. of Colorado*, No. 09-CV-01862-ZLW-MEH, 2010 WL 5464313, at *4 (D. Colo. Dec. 29, 2010) (seeking underlying facts for more than 100 denials to requests for admission "well-exceed[ed] the 35 interrogatory limit"); *Acquired Capital I, L.P. v. Chattahoochee Mortg. & Investments Corp.*, No. 3:10-CV-17-WBH, 2011 WL 13232095, at *4 (N.D. Ga. Feb. 28, 2011) (interrogatory had 26 subparts where it sought all facts supporting the denial of any paragraph in the complaint and complaint had 26 denials).

Similarly, Interrogatory No. 29, which asks the Fortney Entities, for each of their twelve affirmative defenses, to "state in detail all facts upon which [the Fortney Entities] bases such defense; the name, home address, home telephone number, business address, and business telephone number of all witnesses to those facts; and, the identity of all documents supporting such facts," contains twelve separate and discrete subparts. *See Farmers Ins. Exch. v. West*, No. CV 11-2297 (PAM/JJK), 2012 WL 12894845, at *8 (D. Minn. Sept. 21, 2012) ("In other words, Defendants' Interrogatory No. 8 includes fourteen discrete subparts because the factual basis for each affirmative defense is not

logically or factually subsumed within or necessarily related to the factual basis for every other affirmative defense Plaintiffs have raised.").

Because Alexander exceeded his 35 permitted interrogatories with Interrogatory No. 28, the Court sustains the Fortney Entities' subparts objections, grants their motion for protective order, and denies Alexander's motion to compel with respect to Interrogatory Nos. 28, 29, and 30.[11] The Court overrules the Fortney Entities' subparts objection with respect to Interrogatory No. 21 (first knowledge of Alexander's claim) and Interrogatory No. 27 (self-insurance), as even under the Fortney Entities' calculation of subparts for the interrogatories they have already answered (Interrogatory Nos. 1, 2, and 3) and counting the interrogatory for which the Court has overruled the Fortney Entities' objections (Interrogatory No. 7), Alexander had not yet reached his limit with Interrogatory Nos. 21 and 27. Alexander's motion to compel is granted and the Fortney Entities' motion for protective order is denied with respect to Interrogatory Nos. 21 and 27.[12] The Fortney Entities must serve responses to Interrogatory Nos. 21 and 27 within 14 days of the date of this Order.

---

[11] The Court notes that 1328 Uptown has already produced recorded and written statements of various employees. (Dkt. 68 ¶ 2.)

[12] The Fortney Entities also objected to Interrogatory No. 21 as vague and ambiguous, but that objection was not raised in their briefing, so the Court does not address it.

## 2. Requests for Production

Alexander moves to compel the Fortney Entities to respond to his Requests for Production Nos. 2, 5-30, and 32.[13]  (Dkt. 64 at 29-31.)  Those Request for Production are reproduced below:

### Request No. 2

A copy of the Bylaws of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] and any amendments thereto.

### Request No. 5

Copies of the minutes of all meetings of shareholders of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] for the past five years prior to June 27, 2017 (the date of the incident at Bar Louie that is the subject matter of this law suit).

### Request No. 6

Copies of the minutes of all meetings of the Board of Directors of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

### Request No. 7

Copies of all documents or records evidencing bank (cash) transfers, stock transfers or transfers of any other assets, of any kind, having value, from Fortney Hospitality Group, Inc. to Eric Fortney, Marc Fortney, including their spouses and family members.

### Request No. 8

All documents and communications evidencing funds earned by the corporation that were not deposited into its bank account(s).

### Request No. 9

All documents and communications evidencing expenses/liabilities of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], Eric Fortney, Marc Fortney, including their spouses and family members,

---

[13]    The Fortney Entities referred Alexander to previously disclosed insurance policies in response to Request No. 24.  (Dkt. 64 at 29.)

paid by [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] or vice versa.

**Request No. 10**

All documents and communications evidencing Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s credit applications, open account documentation or any other documentation requesting credit from any third party.

**Request No. 11**

Copies of all checks from [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] to Eric Fortney, Marc Fortney, including their spouses and other family members.

**Request No. 12**

All documents and communications evidencing Tax liens and settlement of any past due taxes owed by [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], Eric Fortney, and Marc Fortney, including their spouses and family members.

**Request No. 13**

All documents and communications evidencing gift and loan documentation to and from spouses and third parties[.]

**Request No. 14**

All documents and communications relating to Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s use of any safety deposit box and the contents therein.

**Request No. 15**

All documents and communications related to any property of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], held by third parties.

**Request No. 16**

All documents and communications relating to any loans and/or mortgages owed to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

**Request No. 17**

All documents and communications evidencing loans from any family member, relative, or friend of Eric Fortney and/or Marc Fortney or any business affiliated with Eric Fortney and/or Marc Fortney to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

**Request No. 18**

All documents and communications evidencing loans by [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] to any family member, relative, or friend of Eric Fortney and/or Marc Fortney or to any business affiliated with Eric Fortney and/or Marc Fortney.

**Request No. 19**

Copies of corporate records or ledgers evidencing the identity and address of each person or entity who currently owns or who has owned stock in [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] during the past five prior to June 27, 2017, and since that date to February 1, 2019, the consideration paid or promised for the stock, and the date(s) on which the consideration was paid or promised.

**Request No. 20**

Copies of corporate records or ledgers evidencing the issuance of actual stock certificates at any time since the incorporation of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], to whom they were issued, and the date(s) of issue.

**Request No. 21**

Copies of corporate records or ledgers evidencing the payment of dividends to any shareholder since the incorporation of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], to whom the dividends were paid, the amounts paid, and the date(s) of payment.

**Request No. 22**

For each bank account maintained in the name of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], a copy of the monthly statement for the period beginning June 25, 2012 and ending June 25, 2017.

**Request No. 23**

All documents relating to any ownership or other interest in real estate by [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], including but not limited to deeds, settlement (closing) statements, legal descriptions and appraisals from June 25, 2012 through June 25, 2017.

**Request No. 24**

All leases and rental agreements (including but not limited to automobiles, trucks, motorcycles, motor homes, campers, trailers, watercraft, aircraft, etc.) for [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], from June 25, 2012 through June 25, 2017.

**Request No. 25**

All documents and communications relating to Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s ownership interest in any property – including but not limited to:

> a. All checking and savings accounts (provide all bank statements);
>
> b. Stocks, bonds, and other securities;
>
> c. Accounts receivable;
>
> d. Inventory;
>
> e. Commercial/industrial (C&I) and residential;
>
> f. Motor vehicles, aircraft or watercraft;
>
> g. Judgments held by Fortney Hospitality Group, Inc. against third parties;
>
> h. Rents receivable;
>
> i. Intellectual property; and,
>
> j. Insurance policies.

**Request No. 26**

All documents and communications relating to Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s ownership interest in any real property – including amount originally paid for each property, any mortgages on said property, amount owing on each property, present value of each property and date of last valuation for each property.

**Request No. 27**

All documents showing the cost of acquisition and the title for any vehicle, (including but not limited to automobiles, trucks, motorcycles, motor homes, campers, trailers, watercraft, aircraft, etc.) for [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], from June 25, 2012 through June 25, 2017.

**Request No. 28**

All community property agreements, powers of attorney, nuptial agreements (prenuptial, postnuptial, antenuptial, etc.), separate property agreements, separation agreements, and wills and codicils, where [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] has any interest, or are included as an asset, or specifically where any assets have been pledged, granted, willed as a testamentary asset or given gratuitously or philanthropically to any third party from June 25, 2012 through June 25, 2017.

**Request No. 29**

All trusts you have established and all documents showing contributions you have made to the trust, all trusts in which you are a beneficiary, and all documents showing any distributions you received for [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], from June 25, 20012 through June 25, 2017.

**Request No. 30**

The following documents relating to the finances of any and all business(es) in which you have an ownership interest (excluding publicly traded businesses): all valuations and appraisals, offers to purchase, financial statements (including year-to-date), accounts receivable schedules, asset and depreciation schedules, federal, state, and local tax returns, and loan documents for the time periods checked above, unless otherwise indicated here.

**Request No. 32**

> Copies of the federal and local tax returns of Eric Fortney and/or Marc Fortney and their spouses, and [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], including all schedules and attachments, for each of the parties from June 27, 2012 through June 27, 2017.

(Dkt. 61-6, Ex. 17; Dkt. 61-7, Ex. 18.)

The Fortney Entities objected to each of these requests as "overly broad, irrelevant to the claims asserted in plaintiff's complaint, not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds of proportionality." (Dkt. 61-7, Ex. 18 at 2-8.) Alexander generally asserts these requests for production are relevant and specifically asserts the requests for bylaws and meeting minutes are relevant because Fortney Hospitality Group was charged with selecting the general manager to run Bar Louie and because the requested documents would show if Fortney Hospitality Group "acted reasonably when making decisions regarding 1328 operations" and with regard to the reasonableness of hiring the general manager. (Dkt. 64 at 30; *see generally id.* at 29-31.)

The overwhelming majority of these requests—Request for Production Nos. 7-30 and 32—do not seek documents relevant to the operations of 1328 Uptown; rather they seek documents relating to Fortney Entities' financials (as well as the personal financials of Eric Fortney, Marc Fortney, and their family members). The Court finds that these requests are not relevant to any claim or issue in this case. Rather, they appear to be directed to piercing the Fortney Entities' corporate veils, or possibly directed to the unpleaded veil-piercing theory with respect to 1328 Uptown. Those requests for

production are simply not relevant to any issue in this case, and certainly not proportionate when considering the broad scope of discovery they seek, the burden and expense responding to these requests would impose, and the importance of the sought-after documents in resolving the issues in this action. *See* Fed. R. Civ. P. 26(b)(1).

As to Request Nos. 2, 5, and 6 (the Fortney Entities' bylaws and shareholders' and directors' meeting minutes), Alexander contends those documents are relevant because they will show whether the Fortney Entities' boards and shareholders acted reasonably when making decisions regarding 1328 Uptown's operations and how reasonably they acted to ensure 1328 Uptown's patrons were reasonably secure. (Dkt. 64 at 30-31.) Even if the requested documents contained that information, its relevance to the claims in this case is marginal at best. Consequently, the Court sustains the Fortney Entities' objections, denies Alexander's motion to compel, and grants the Fortney Entities' motion for protective order with respect to Request for Production Nos. 2, 5-30, and 32 on relevance and proportionality grounds. *See* Fed. R. Civ. P.26(b)(1); *Hofer*, 981 F.2d at 280; *Shukh*, 295 F.R.D. at 237.

### 3. Requests for Admission

Alexander's Motion seeks to compel responses to Request for Admissions Nos. 1-14 to each of the Fortney Entities. (Dkt. 64 at 31.) Those requests are reproduced below.

**<u>Request No. 1</u>**

Admit that [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] received management or service fees from 1328 Uptown.

**Request No. 2**

Admit that [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] paid franchisee fees or management fees related to its Bar Louie restaurant operated by 1328 Uptown, to franchisor BL Restaurant Operations, LLC, a Texas Limited Liability Corporation.

**Request No. 3**

Admit that 1328 Uptown provided income and/or distributions to [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

**Request No. 4**

Admit that from the date of incorporation of 1328 Uptown to the present, Eric Fortney and/or Marc Fortney acted as an officer, board director, shareholder, and/or employee of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

**Request No. 5**

Admit that Eric Fortney and/or Marc Fortney, from the date of incorporation of 1328 Uptown to the present, acted as a director of 1328 Uptown commensurate with acting as a director of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

**Request No. 6**

Admit that [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] created the following materials: Co-Worker Handbook, Server Manual, Server Training Manual, Bartender Training Manual, Bartender Training Guide, Host Manual, Host Training Guide, Host Responsibilities, Managers Manual, Manager Manual, Red Shirt Manual, Red Shirt Training Guide.

**Request No. 7**

Admit that the policies contained in any of the materials referenced in Request for Admission No. 6, could not be changed by 1328 Uptown employees and managers without approval from [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

**Request No. 8**

Admit that Bar Louie and all Bar Louie employees were to adhere to all policies referenced in all documents referenced in Request for Admission No. 6.

**Request No. 9**

Admit that Eric Fortney signed the "Business License Operating Conditions" for Bar Louie, dated March 14, 2017 (See PLTF_A000237-238.), commensurate with Eric Fortney acting as an officer, board director, shareholder, and/or employee of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

**Request No. 10**

Admit that [Fortney Companies, Inc./Fortney Hospitality Group, Inc.] created and/or approved all official policies and procedures that Bar Louie and Bar Louie employees were to follow at all times relevant to the complaint in this matter.

**Request No. 11**

Admit that the complaint filed in this matter is not the first complaint alleging a claim against [Fortney Companies, Inc./Fortney Hospitality Group, Inc.], 1328 Uptown, and/or its subsidiaries for violating a Dram Shop Act.

**Request No. 12**

Admit that from 2011 until the closing of 1328 Uptown, Fortney Companies, Inc.'s/Fortney Hospitality Group, Inc.'s board of directors, officers, shareholders, and/or attorneys discussed, considered, contemplated, deliberated, decided and/or voted upon matters relating to 1328 Uptown and/or Bar Louie.

**Request No. 13**

Admit that Eric Fortney, Marc Fortney and/or Ronald Fortney were involved in the incorporation of [Fortney Companies, Inc./Fortney Hospitality Group, Inc.]

**Request No. 14**

Admit that Eric Fortney, Marc Fortney and/or Ronald Fortney were involved in the incorporation of 1328 Uptown, Inc.

(Dkt. 61-15, Ex. 26; Dkt. 61-14, Ex. 25.)

The Forney Entities objected to all the requests as "irrelevant to any claim or allegation contained in Plaintiff's Complaint in violation of Fed. R. Civ. P. 36(a)(1) and 26(b)(1)." (*Id.*, Exs. 25-26; *see also* Dkt. 66 at 16 ("Obviously the relevancy issues as to the subject matter of Plaintiff's discovery directed to FHG and FC apply to these requests as well.").) The Fortney Entities also objected to the form of most of the questions as a violation of Rule 36(a)(2), which provides that "each matter must be separately stated." (*Id.*)

The Court first considers the Fortney Entities' objections pursuant to Rule 26(b)(1). The Fortney Entities contend that "the overriding problem with these discovery requests [including the Requests for Admission] is described fully in Defendants' motion for protective order and involves the fact that Plaintiff is engaging in a fishing expedition into the assets and governance of FHG and FC when there is no basis in any allegation set forth in Plaintiff's Complaint to justify this intrusive and overly broad inquiry into these two entities" and claim they are directed to veil-piercing. (Dkt. 66 at 3, 15.) Alexander responds that the "requests cover who was in charge of 1328 and the Fortney Entities, and the degree of notice and foreseeability on the part of the Fortneys' directors, officers and managers regarding dangerous conditions in the bar." (Dkt. 64 at 32-33.) Alexander also contends that "several requests relate directly to the training that was in

place, who developed the training methods and materials, and who approved the same."
(*Id.* at 33.) Finally, Alexander argues that "Given the Fortney Entities' contention that
they are not liabile [sic] and improperly joined in this action, it would be expected that
they would have provided more facts to support that contention in response to Plaintiff's
Discovery Requests." (*Id.*)

The Court notes that some of the requests do have a veil-piercing tinge to them,
and further notes that Alexander's view of "foreseeability" for his claims is, as discussed
in Section III.A, not supported by law. However, the Complaint does allege that
"Defendants"—which includes the Fortney Entities—"owned and operated Bar Louie
Uptown" at all relevant times. (Dkt. 1 ¶ 6.) Thus, whether one or both of the Fortney
Entities operated 1328 Uptown is an issue in this case. In contrast to Alexander's
interrogatories and requests for production seeking disproportionate and irrelevant
information about the Fortney Entities' capitalization, finances, and governance, these
requests for admission seek information about the general corporate structure and
relationship between the Defendants, whether the Fortney Companies created certain
employee manuals (some of which appear to have been produced in this case), whether
the Fortney Entities dictated 1328 Uptown's policies, and the Fortney Entities'
involvement in the operation of 1328 Uptown. In view of the Fortney Entities' denial of
any operation of 1328 Uptown (Dkt. 13 ¶ 6) and the Fortney Entities' intent to seek
dismissal on the ground that neither is proper defendant in this action (*id.*, Affirmative
Defense No. 2), the Court finds that the Fortney Entities' responses to these admissions
are relevant to the claims and defenses in this case and are proportionate to the needs of

this case. The Court therefore overrules the Fortney Entities' objections on relevance grounds.

The Court next considers the Fortney Entities' objections on the grounds that they are compound, conjunctive, or disjunctive. (Dkt. 66 at 15.) "Rule 36 serves two vital purposes . . . [a]dmissions . . . facilitate proof with respect to issues that cannot be eliminated from the case, and . . . to narrow issues by eliminating those than can be." Fed. R. Civ. P. 36(a) advisory committee's note to 1970 amendment. Their "quintessential function . . . is to allow the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification as to those facts, or opinions, that remain in dispute." *Orbital ATK, Inc. v. Heckler & Koch GmbH*, CV 17-250 (DSD/FLN), 2018 WL 1353231, at *2 (D. Minn. Jan. 11, 2018) (quoting *Lakehead Pipe Line Co. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 457-58 (D. Minn. 1997)). "[T]he purpose of [Rule 36(a) ] is to expedite trial by eliminating the necessity of proving undisputed and peripheral issues." *Lakehead Pipe Line*, 177 F.R.D. at 458.

The Fortney Entities assert: "It [ha]s also been held that '[r]equests for admissions may not contain compound, conjunctive, or disjunctive (e.g., "and/or") statements.'" *U.S. ex rel. Englund v. Los Angeles Cty.*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) (parenthetical information in original), citing *Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y.1992)." (Dkt. 66 at 15.) However, courts that have considered compound, conjunctive, or disjunctive objections have not ended the inquiry simply based on whether the request contains an "and/or"; rather, some have reasoned:

There is some case authority that use of these words renders a Request for Admission compound. *See United States ex rel. England v. Los Angeles*, 235 F.R.D. 675, 684 (E.D. Cal. 2006). However, in *Diedrich v. Dep't of Army*, 132 F.R.D. 614, 619-21 (S.D.N.Y.), the court found that the test for RFAs is whether they are capable of being answered with a simple "yes" or "no." The court went on to state. "Compound requests that are capable of separation into [distinct] components and that follow a logical or chronological order, however, should be denied or admitted in sequence with appropriate designation or qualification by defendant in its response." *Id.*, at 621.

*City of Colton v. American Promotional Events, Inc.*, Case No. ED CV 09-01864 PSG (SSx), 2012 WL 13013378, at *3 (C.D. Cal. Jan. 27, 2012) (ordering response "to the best of [responding party's] ability); *see also San Diego Unified Port District*, 2017 WL 3877731, at *2 ("Requests for admission may not contain compound, conjunctive, or disjunctive (e.g., 'and/or') statements. However, a party may not avoid responding based on technicalities. For example, a party who is unable to agree with the exact wording of the request for admission should agree to an alternate wording or stipulation.") (cleaned up); *Englund*, 235 F.R.D. at 684 (same).

Here, while many of the requests at issue contain the term "and/or" or are otherwise compound, the Court concludes that at least some of the requests are capable of separation into distinct components. For example, Request for Admission Nos. 4 and 5 may be answered as to Eric Fortney and Marc Fortney. Request for Admission Nos. 13 and 14 may be answered as to Eric Fortney, Marc Fortney, and Ronald Fortney. Request for Admission No. 10 may be answered with respect to both "created" and "approved." As the court explained in *Diederich v. Department of Army*,

Where it is evident that multiple, interdependent issues are contained in one request, defendant may deny the entire statement if one fact, on which the remainder of the request is premised, is denied; plaintiff drafts complex

requests at his peril.  Compound requests that are capable of separation into distinct components and that follow a logical or chronological order, however, should be denied or admitted in sequence with appropriate designation or qualification by defendant in its response.

132 F.R.D. 614, 621 (S.D.N.Y. 1990); *see also Cummerlander v. Patriot Preparatory Academy*, Case No. 2:13-cv-0329, 2014 WL 12651258, at *12 (S.D. Ohio May 16, 2014) (granting motion to compel over objections in brief that, *inter alia*, "the request is both conjunctive and disjunctive" and facially objectionable).  Consequently, the Court grants Alexander's motion to compel and denies the Fortney Entities' motion for protective order with respect to Request for Admission Nos. 1-14.  Within 14 days of the date of this Order, the Fortney Entities shall serve responses to these requests to the extent the compound requests are capable of separation into distinct components and follow a logical or chronological order.[14]

**D.    Alexander's Written Discovery to 1328 Uptown**

Alexander moves to compel 1328 Uptown to respond to Interrogatory Nos. 25-35, Request for Production Nos. 1, 12, 18, and 27-44, and Request for Admission Nos. 2, 5, 7, 9, and 13-16.  (Dkt. 64 at 6-25; Dkt. 77.)  The Court considers each set of discovery below.

---

[14]    To the extent the Fortney Entities objected on other grounds, such as vagueness and ambiguity, those objections were not raised in the briefing, and the Court does not address them.

## 1.    Interrogatories

The Court first considers 1328 Uptown's objections to Interrogatory Nos. 25-33 on grounds other than subparts.

### Interrogatory No. 25

Please state whether or not any lawsuits have been filed against you within the last five years relating to any type of liquor liability and/or dram shop claim.  If the answer to the preceding interrogatory was yes, please provide the name of the claimant/plaintiff, the facts surrounding the claim, the claimant's attorney, and if any lawsuits were filed, the county in which they were filed, and the docket number assigned to said lawsuits, as well as identify the final disposition to the claim(s) in each case.

### Interrogatory No. 26

Please describe any and all complaints, investigations, penalties, fines, citations or other legal or administrative actions that have been filed, brought or taken against Bar Louie or any of its owners or managers, by any governmental and/or regulatory agency, from the date you began operating Bar Louie through the present. For each instance, state the name of the department, agency, person, etc. who initiated the action or proceeding, the nature of it, the result and any fines or penalties paid, as well as any corrective measures that were implemented by you to prevent further occurrences.

### Interrogatory No. 27

State the names of any other business entities that Bar Louie or any of its owners or managers have owned and/or associated with that has either applied for or held retail liquor license.  For each such entity, list the name of it, the address, the manner in which you were involved with it, the dates of your involvement, and give a brief description of the type of business.  For each entity, please describe any and all complaints, investigations, penalties, fines or other legal or administrative action by any governmental and/or regulatory agency that has been filed, brought or taken against you from the date you or it during your ownership or employment.  For each instance, state the name of the department, agency, person, etc. who initiated the proceeding, the nature of it, the result, including any

fines or penalties paid, as well as any corrective measures that were implemented by you to prevent further occurrences.

**Interrogatory No. 28**

Identify all documents and communications (including electronic data and electronic communications/e-mail) that you or any of your employees or agents created that pertain to the activities of Eddie Burch on June 25-26, 2017. Such documents include, but are not limited to: managers' daily logs, incident reports, reports of disturbance, and any other document or statement.

**Interrogatory No. 29**

State what percentage of your revenue was derived from the sale of alcoholic beverages for the following periods: June 25, 2017; June 26, 2017, the entire year of 2017.

**Interrogatory No. 30**

State the number of times the police were summoned to or appeared at Bar Louie during 2017 to respond to complaints of the intoxication of any person, or any other illegal or complained of behavior.

**Interrogatory No. 31**

Identify and describe all cameras and other recording equipment (whether audio, visual, or any other type of recording device) installed at Bar Louie on June 25, 2017 and June 26, 2017. Identify and describe what images or sounds, if any, were recorded by such equipment (whether by audio, visual, or any other means) on or within the Bar Louie premises on June 25 or 26, 2017. If any such recording no longer is in your custody or control, please state the reason such recording no longer is in your custody or control and identify the person or entity that now has custody or control of such recording.

**Interrogatory No. 32**

In 2017, did you expel or stop alcohol service to any patron of Bar Louie due to unruly or boisterous behavior, or for excessive intoxication? If so, please identify each such patron, and state whether you summoned or notified law enforcement personnel as a result of such patron's behavior or intoxication.

**Interrogatory No. 33**

State whether at any time prior to answering these interrogatories and subsequent to June 25, 2017, any person complained or alleged that he/she or anyone suffered bodily injuries or death as a result of defendant Bar Louie's conduct, whether negligent and/or careless and/or improper and/or as a result of dram shop violation concerning the service of alcohol to an intoxicated customer, patron, guest or other such person on its premises. If so, state:

    a) identify all such claimants and their attorneys;

    (b) if a lawsuit was instituted against the defendant, state the names and addresses of the claimants, their attorney(s), and the Court in which such claim was instituted.

**Interrogatory No. 34**

Did 1328 Uptown, Inc. (herein "1328 Uptown") ever advance funds to any shareholder, officer, employee, and/or director of Fortney Companies, Inc. or Fortney Hospitality Group, Inc., or to Fortney Companies, Inc. or Fortney Hospitality Group, Inc. for loans, dividends, gifts, or services performed or services to be performed later? If so, for each such advance, state:

    (a) the identity of the person to whom the funds were advanced.

    (b) the date of the advance.

    (c) the amount of the advance.

    (d) the reason for such advance.

    (e) the services to be performed, whether they were performed and when they were performed.

**Interrogatory No. 35**

Did any shareholder, employee, officer, or director of 1328 Uptown, Inc. ever guaranty or cosign any obligation of Fortney Companies, Inc. or Fortney Hospitality Group, Inc.? If so, for each such action, state:

(a) the identity of the person or entity, including their home address, home telephone number, business address, and business telephone.

(b) the identity of the creditor or lender, including their business address and business telephone number.

(c) the nature of the obligation and the total amount of the obligation.

(d) the date on which the person or entity guaranteed or cosigned the obligation.

(Dkt. 61-3, Ex. 14.)

As to Interrogatory Nos. 25, 26, 27, 30, and 33, Alexander contends in his brief in support of his Motion they are relevant to issues in the case because, relying on *Henson*, "[t]he foreseeability of one of 1328's patrons injuring another patron is highly relevant to Plaintiff's Innkeeper Liability claim."  (Dkt. 64 at 8.)  Alexander further argued in this brief in opposition to 1328 Uptown's Motion that Interrogatory Nos. 25-27, 30, and 32-33 are relevant because "[w]hether 1328 dealt with prior disturbances at its bar provides context for the knowledge, skill, training or experience 1328 personnel had on the night in question at identifying patrons with 'vicious or dangerous propensities' by 'some act or threat.'"  (Dkt. 74 at 4.)  As explained above in Section III.A, the foreseeability at issue in *Henson* is the "notice of the offending party's 'vicious or dangerous propensities' by 'some act or threat,'" 922 N.W.2d at 190, not the generalized "foreseeability" advocated by Alexander.  None of these interrogatories seek information about whether 1328 Uptown had notice that <u>Burch</u> had any vicious or dangerous propensities by some act or threat, nor do they actually seek information about the knowledge, skill, training, or experience held by the personnel working at 1328 Uptown the night of June 25-26, 2017.

Rather, they seek extensive information about 1328 Uptown's legal difficulties and incidents involving intoxicated patrons without a meaningful connection to the incident giving rise to Alexander's injuries. The Court sustains 1328 Uptown's objections to Interrogatory Nos. 25, 26, 27, 30, 32, and 33 on relevance grounds. Further, the interrogatories seek extensive information, including, for example, about "any and all complaints, investigations, penalties, fines, citations or other legal or administrative action that have been filed, brought or taken against Bar Louie or any of its owners or managers . . . from the date you began Bar Louie to the present" (Interrogatory No. 26) and similar information for "any other business entities that Bar Louie or any of its owners or managers have owned and/or associated with that has either applied for or held [a] retail liquor license" (Interrogatory No. 27). The interrogatories are thus also disproportionate to the needs of the case.

Alexander contends with respect to Interrogatory Nos. 28, 29, 31, and 32 that they seek information about "the procedures and tools used to maintain security at Bar Louie." (Dkt. 64 at 8.) Interrogatory No. 29 seeks the percentage of 1328 Uptown's revenue that was derived from the sale of alcoholic beverages for the following periods: June 25, 2017; June 26, 2017, the entire year of 2017.[15] Alexander argues "1328's revenue allocations are also probative of whether it knew or should have known of the opportunity it had to provide more reasonable control over its bartenders' alcohol service decisions, by allocating resources for their alcohol service training." (Dkt. 74 at 8.) The

---

[15]     1328 Uptown has produced its sales receipts for the night of June 25-26, 2017. (Dkt. 77.)

Court rejects this strained reasoning because the interrogatories in question do not seek information about the "alcohol service training" of bartenders and because this rationale is based on Alexander's overbroad view of foreseeability. The Court therefore grants 1328 Uptown's motion for protective order, and denies Alexander's motion to compel, with respect to Interrogatory Nos. 25, 26, 27, 29, 30, 32, and 33.

However, Interrogatory No. 28 seeks identification of all documents and communications "that pertain to the activities of Eddie Burch on June 25-26, 2017." It appears that 1328 Uptown is only maintaining its objection based on attorney/client privilege or work product protection. (Dkt. 65 at 8.) 1328 Uptown identified documents and video that it has produced in response to related requests for production. (*Id.*) However, 1328 Uptown does not appear to have provided a narrative response to this interrogatory. (*See* Dkt. 61-3, Ex. 14.) Accordingly, 1328 Uptown has 14 days from the date of this Order to identify the documents and video it asserts are responsive by Bates number or otherwise in sufficient detail to enable Alexander to locate and identify them as readily as 1328 Uptown could. *See* Fed. R. Civ. P. 33(d).

Interrogatory No. 31 seeks identification and description of all cameras and other recording equipment installed at Bar Louie on June 25-26, 2017, and a description of the images or sounds that were recorded on those nights. 1328 Uptown objected to this interrogatory on subparts grounds, did not object to this interrogatory on relevance grounds, and appears to have produced related video. (*See* Dkt. 65 at 8.) However, it appears that 1328 Uptown did not provide a description of the requested cameras and other recording equipment or identify documents in response to this interrogatory. 1328

Uptown shall identify the documents and/or videos it claims are responsive to this interrogatory pursuant to Rule 33(d) and provide a narrative response describing the cameras and other recording equipment (or identify responsive document(s) that comply with Rule 33(d)) within 14 days of the date of this Order.

Interrogatory No. 34 asks whether 1328 Uptown ever advanced funds to shareholders, officers, directors, or employees of the Fortney Entities and Interrogatory No. 35 asks if any shareholder, officer, employee, or director of 1328 Uptown ever guaranteed or cosigned any obligation for a Fortney Entity. The information these interrogatories seek is not relevant to any claim or defense in this action, and Alexander admits this discovery is directed to veil-piercing. (Dkt. 74 at 7.) Consequently, the Court grants 1328 Uptown's motion for protective order and denies Alexander's motion to compel with respect to Interrogatory Nos. 34 and 35.

The Court now considers 1328 Uptown's subparts objections. 1328 Uptown objected to Interrogatory Nos. 25-33 on subpart grounds, arguing that Interrogatory Nos. 1-24, counting all discrete subparts, reach Alexander's limit of 35 interrogatories. (Dkt. 65 at 6; *see* Dkt. 55 at 9.) In particular, 1328 Uptown contends: "Interrogatory No. 1 contains three discrete subparts. Interrogatory No. 12 contains two discrete subparts. Interrogatory No. 15 contains five discrete subparts. Interrogatory No. 22 contains two discrete subparts." (Dkt. 55 at 9.) 1328 Uptown further asserts "Interrogatory Nos. 5, 14, 16, 17, 19, and 24 are compound interrogatories which constitute more than a single interrogatory, despite being presented as a single interrogatory." (*Id.*) However, 1328 Uptown did not explain how these interrogatories are "compound" or how many subparts

were in each interrogatory. Having reviewed the interrogatories that 1328 Uptown has already answered and that the Court has now ordered 1328 Uptown to answer, and taking into consideration the subpart counts that 1328 Uptown did provide, the Court is satisfied that the total of those interrogatories, even including subparts and if some are compound, do not exceed the limit of 35 interrogatories. The Court therefore overrules 1328 Uptown's subparts objections with respect to Interrogatory Nos. 28 and 31. 1328 Uptown's motion for protective order is denied and Alexander's motion to compel is granted with respect to Interrogatory Nos. 28 and 31.

### 2. Requests for Production[16]

Alexander moves to compel responses to Request for Production Nos. 1, 12, 18, and 27-44. (Dkt. 64 at 9-14; Dkt. 77.) The Court addresses these requests below.

---

[16] 1328 Uptown represents that it has produced the following documents:

- Surveillance video from June 25 – 26, 2017;
- Law enforcement records;
- Recorded statements of Sonny Keo and Logan Baxter;
- Written statements of John Storey, Sonny Keo, Alyssa Nelson, Christopher Schuldt, Kailey Leach, and Logan Baxter;
- Audio and visual equipment invoices;
- Employee timesheets for June 25-26, 2017;
- Training guides for Bartenders, Hosts, Managers, Red Shirts, and Servers;
- Manuals for Bartenders, Hosts, Managers, Red Shirts, and Servers;
- Host Responsibilities;
- Policy and procedures for Food Safety and Handling and ID Checking;
- Co-Worker Handbook;
- Business Operation Plan;
- Liquor License;
- Net sales for June 25th, 2017;
- Manager's Log for June 2017;
- June 25 - 26, 2017 receipts; and

<u>**Request for Production No. 1**</u>

> Produce all management agreements, operation agreements, security agreements, consulting agreements, independent contractor agreements, sales agreements, lease agreements, guarantees, or contracts pertaining or relating in any way to management operation, security, employee training, or staffing of Bar Louie during the past five (5) years.

1328 Uptown has produced a copy of the lease agreement responsive to this request that was in effect as of June 25-26, 2017, so the dispute between the parties appears to be whether 1328 Uptown should produce responsive contracts/agreements that were not in effect on June 25-26, 2017. (*See* Dkt. 64 at 9-10; Dkt. 65 at 9.) Alexander contends that the historical agreements pertaining or relating to management operation, security, employment training, and staffing are relevant to whether the security measures in place on June 25-26, 2017 were reasonable and the feasibility of taking such measures. (Dkt. 64 at 10.) 1328 Uptown responses: "the only relevant conduct by 1328 Uptown is whether its employees reasonably acted to protect its patrons from harm once it had notice of Eddie Burch's dangerous or violent propensities on June 25 – 26, 2017." (Dkt. 65 at 9.) Alexander has not identified any claim in this case where the reasonableness and foreseeability of 1328 Uptown's security measures historically (rather than on the night of the incident in question) is an element, and 1328 Uptown has already produced the responsive agreement in effect as of June 25-26, 2017, the date of Alexander's injuries. To the extent prior responsive agreements exist, their relevance is marginal at

---

- Promotional flyers.

(Dkt. 57 ¶ 2.)

best.  The Court therefore denies Alexander's motion to compel and grants 1328

Uptown's motion for protective order as to this request on relevance and proportionality

grounds.

### Request for Production No. 12

> Produce a copy of the register, cash, credit card, and/or voucher receipts,
> and all records in whatever form, regarding food and/or alcoholic beverages
> sold on the premises of Bar Louie, and/or by its employees, agents, or
> servants on behalf of Bar Louie, on June 25 and 26, 2017, and for all of
> June 2017.

Although 1328 Uptown produced its receipts for June 25-26, 2017, it has objected

to producing its receipts for all of June 2017.  (Dkt. 64 at 11.)  Alexander argues the

"[r]ecords of sales and ratios of food to alcohol sales are probative of whether 1328 had a

pattern and practice of overselling alcohol to its patrons, and whether 1328 could foresee

its patrons getting dangerously intoxicated, based on 1328 sales practices." (*Id.*)  As with

many of Alexander's other requests, this argument relies on Alexander's overly broad

view of foreseeability for his innkeeper's liability claim.  The Court therefore denies

Alexander's motion to compel and grants 1328 Uptown's motion for protective order

with respect to this request.

### Request for Production No. 18

> Produce your entire personnel file on every individual working at
> Bar Louie on June 25-26, 2017 who was involved in any way in
> security, management or the sale or service of beer or other alcoholic
> beverages.

Alexander contends this request seeks documents that "are probative to a fact of

consequence, in Plaintiff's Innkeeper Liability claim, of whether 1328 took reasonable

steps to prevent its patrons from harming one another." (Dkt. 64 at 13.) 1328 Uptown responses that its employees' personnel files contain "personal identifiers (e.g. social security numbers) which in the current climate of prolific identity theft, should be safeguarded" and that the files are not relevant. (Dkt. 65 at 10.)

The record reflects that the 1328 Uptown has already produced training guides and manuals, along with the Co-Worker Handbook, for its employees. (Dkt. 65 at 2.) Alexander has not explained why he needs the employees' personnel files, which do not appear to contain any document reflecting training or supervision of employees other than the Co-Worker Handbook already produced (Dkt. 65 at 2-3), to determine whether 1328 Uptown took reasonable steps to prevent its patrons from harming one other (setting aside whether that issue is relevant to any claim or defense). Accordingly, the Court denies Alexander's motion to compel and grants 1328 Uptown's motion for protective order with respect to this request.

The Court turns to Request for Production Nos. 27-44. The parties treated these requests collectively; the Court therefore does the same. (*See* Dkt. 55 at 6-7; Dkt. 64 at 13-14; Dkt. 65 at 10-12; Dkt. 74 at 7-10.)

### Request for Production No. 27

A copy of the Articles of Incorporation of 1328 Uptown and any amendments thereto.

### Request for Production No. 28

A copy of the Bylaws of 1328 Uptown and any amendments thereto.

**Request for Production No. 29**

A copy of the Notice of Incorporation of 1328 Uptown as it appeared when first published.

**Request for Production No. 30**

Copies of the minutes of all meetings of shareholders and Board of Directors of 1328 Uptown, including but not limited to meetings where any matter arising out of, concerning, relating to, or referencing Bar Louie, Bar Louie's finances, Bar Louie's operations, or Bar Louie's personnel, Bar Louie lawsuits, Bar Louie's security, and/or incidents of violence at Bar Louie was discussed for the past eight years.

**Request for Production No. 31**

Copies of the minutes of all meetings of shareholders and/or Board of Directors of 1328 Uptown where the matter of the closing of Bar Louie Uptown was discussed, considered, contemplated, decided, and/or voted upon.

**Request for Production No. 32**

Copies of all documents or records evidencing bank (cash) transfers, stock transfers or transfers of any other assets, of any kind, having value, from 1328 Uptown to Fortney Companies, Inc., Fortney Hospitality, Inc., Eric Fortney, Marc Fortney, and Ronald Fortney, including their spouses and family members.

**Request for Production No. 33**

Copies of corporate records or ledgers evidencing the issuance of actual stock certificates at any time since the incorporation of 1328 Uptown, to whom they were issued, and the date(s) of issue.

**Request for Production No. 34**

Copies of corporate records or ledgers evidencing the identity and address of each person or entity who currently owns, or who has owned, stock in 1328 Uptown, from the date of incorporation of 1328 Uptown, until the present, including the consideration paid or

promised for the stock, and the date(s) on which the consideration was paid or promised.

**Request for Production No. 35**

Copies of all documents and communications evidencing loans or advances by 1328 Uptown to Eric Fortney, Marc Fortney, and/or any family member, relative, or friend of Eric Fortney and/or Marc Fortney, Fortney Companies, Inc., and/or Fortney Hospitality Group, Inc.

**Request for Production No. 36**

Copies of all documents and communications evidencing any capital contributions by Fortney Companies, Inc., Fortney Hospitality Group, Inc., Eric Fortney, Marc Fortney, and Ronald Fortney, including their spouses and family members, to 1328 Uptown.

**Request for Production No. 37**

Copies of corporate records or ledgers evidencing the payment of dividends to any shareholder since the incorporation of 1328 Uptown, including to whom the dividends were paid, the amounts paid, and the date(s) of payment.

**Request for Production No. 38**

Copies of all documents relating to any ownership or other interest in real estate by 1328 Uptown, including but not limited to deeds, settlement (closing) statements, legal descriptions and appraisals from June 25, 2012 through June 25, 2017.

**Request for Production No. 39**

Copies of all documents and records evidencing an IRS Form K-1 for each shareholder of 1328 Uptown.

**Request for Production No. 40**

Copies of the federal and local tax returns of 1328 Uptown from June 27, 2012 to present.

**Request for Production No. 41**

For each bank account maintained in the name of 1328 Uptown, a copy of the monthly statement for the period beginning June 25, 2012 and ending December 31, 2018.

**Request for Production No. 42**

Copies of all documents and communications evidencing expenses and liabilities of 1328 Uptown that were transferred to, assumed by, and/or paid by Fortney Hospitality Group, Inc., Fortney Companies, Inc., Eric Fortney, Marc Fortney, Ronald Fortney, their spouses, friends and/or family members.

**Request for Production No. 43**

A copy of the franchise agreement for, or related to, the franchising of Bar Louie (the restaurant and drinking establishment located at 1328 Lagoon Avenue, Minneapolis, Minnesota 55408).

**Request for Production No. 44**

Copies of all documents and communications evidencing management or services agreements between 1328 Uptown and Fortney Companies, Inc., Fortney Hospitality Group, Inc., and/or any other entity controlled, owned or managed by Eric Fortney, Ronald Fortney and/or Marc Fortney.

(Dkt. 57-1, Ex. A.)

According to Alexander, these requests seek "documents pertaining to [1328 Uptown's] corporate formation, organization, personnel, operations, and financing." (Dkt. 64 at 13.) According to Alexander, "[w]hether 1328 was properly formed, organized, staffed, operated, and financed is probative of if it could or actually did take reasonable steps to protect its patrons from harming one another" and thus is relevant to his innkeeper's liability and negligence claims. (*Id.* at 14; *see also* Dkt. 74 at 8-10.) 1328 Uptown responds that "staffing information was disclosed in Interrogatory No. 3,"

and that "1328 Uptown's business operation plan, as well as, manuals, training guides, and policies/procedures in effect on June 25 – 26, 2017 have all been produced." (Dkt. 65 at 12.)

First, the Court finds these requests are plainly directed to veil-piercing discovery. Second, to the extent the documents they seek are relevant to any issue in this case, they are not only disproportionate to the needs of the case, but also duplicative and cumulative of the documents already produced by 1328 Uptown. The Court denies Alexander's motion to compel and grants 1328 Uptown's motion for protective order with respect to Request for Production Nos. 27-44.

### 3. Requests for Admissions to 1328 Uptown

1328 Uptown objected to the Request for Admission Nos. 2, 5, 7, 9, and 13-16, which are reproduced below.

> **Request for Admission No. 2**
>
> Admit that Eric Fortney and/or Marc Fortney were involved in the incorporation [sic] 1328 Uptown, commensurate with Eric Fortney and/or Marc Fortney serving as an officer, board director, shareholder, and/or employee of Fortney Hospitality Group, Inc. and/or Fortney Companies, Inc.
>
> **Request for Admission No. 5**
>
> Admit that Fortney Companies, Inc. and/or Fortney Hospitality Group received management or services fees from 1328 Uptown.
>
> **Request for Admission No. 7**
>
> Admit that Fortney Hospitality Group owns 100% of the shares of 1328 Uptown, Inc.

**Request for Admission No. 9**

Admit that 1328 Uptown provided income and/or distributions to Fortney Hospitality Group, Inc. and/or Fortney Companies, Inc.

**Request for Admission No. 13**

Admit that Eric Fortney and/or Marc Fortney were authorized signers or owners on 1328 Uptown's corporate bank account(s).

**Request for Admission No. 14**

Admit that Eric Fortney and/or Marc Fortney participated in the decision to keep 1328 Uptown's Bar Louie open after it had been sued violations of Minn. Stat. § 340A.801, or cited for acts arising out of the operation of Bar Louie, commensurate with serving as an officer, board director, shareholder, and/or employee of Fortney Hospitality Group, Inc. and/or Fortney Companies, Inc.

**Request for Admission No. 15**

Admit that Eric Fortney and/or Marc Fortney participated in the decision to close 1328 Uptown, commensurate with serving as an officer, board director, shareholder, and/or employee of Fortney Hospitality Group, Inc. and/or Fortney Companies, Inc.

**Request for Admission No. 16**

Admit that barlouie.uptown@fortneycompanies.com was an email address used by Bar Louie managers.

(Dkt. 61-13, Ex. 24.)

1328 Uptown objected to these requests on the ground that they are "irrelevant to any claim or allegation contained in Plaintiff's Complaint" and because each matter is not separately stated. (Dkt. 61-13, Ex. 24; *see also* Dkt. 65 at 13-14; Dkt. 55 at 7-8.) Alexander contends these requests are in the proper form and are relevant to veil-piercing and whether 1328 Uptown took reasonable steps to ensure its patrons' safety. (Dkt. 64 at 14-26; Dkt. 74 at 10-12.) Although the Court is not persuaded by many of Alexander's

contentions regarding relevance (e.g., whether 1328 Uptown was adequately funded is probative of whether it took reasonable steps with regard to its patrons' safety or whether Eric Fortney or Marc Fortney was a director of Fortney Hospitality Group when incorporating 1328 Uptown is probative of whether they had the time to set procedures that would ensure safety at 1328 Uptown), the Court finds that these requests seek information relevant to whether the Fortney Entities operated 1328 Uptown and whether they are proper defendants in this case.

1328 Uptown also objected to these requests for admission because they "seek[] admissions on multiple matters" and cannot be answered with more than an "admit" or "deny." (Dkt. 55 at 7-8.) For the reasons stated with respect to Alexander's requests for admission to the Fortney Entities, the Court overrules these objections. 1328 Uptown is directed to serve responses to these requests to the extent they are capable of separation into distinct components and follow a logical or chronological order within 14 days of the date of this Order.[17] To the extent 1328 Uptown argues they cannot be answered with more than an "admit" or "deny," the Court is not convinced that 1328 Uptown's concerns are more than theoretical. 1328 Uptown should keep in mind that Rule 36 permits 1328 Uptown to "qualify an answer or deny only part of a matter" and requires 1328 Uptown to "state in detail why [it] cannot truthfully admit or deny" the request if a matter is not admitted or specifically denied. *See* Fed. R. Civ. P. 36(a)(4).

---

[17] The Court does not address any of 1328 Uptown's objections that were not raised in the briefing.

**D. Protective Order and Local Rule 5.6**

Alexander notes in his brief in support of his motion to compel that 1328 Uptown withheld its lease agreement from production on the grounds that a protective order had not yet been entered in this case in violation of the Pretrial Scheduling Order. (Dkt. 64 at 3.) For its part, 1328 Uptown contends that Alexander filed the franchise agreement, which was designated "Confidential" under the Protective Order, in violation of the Protective Order and Local Rule 5.6 because Alexander filed a confidential franchise agreement publicly, rather than under temporary seal, and did not provide notice to 1328 Uptown that he intended to do so. (Dkt. 66 at 16-17.) The Court finds that Alexander and 1328 Uptown have each violated an Order of the Court. 1328 Uptown has violated the Court's Pretrial Scheduling Order, which specifically prohibits the withholding of documents on the ground that a Protective Order has not yet been entered.[18] (Dkt. 24 at 9.) Alexander violated paragraph 4 of the Protective Order, which limits disclosure of documents designated as "Confidential" to certain persons, by publicly filing the franchise agreement on CM/ECF. (Dkt. 45 ¶ 4.) This time, the Court will not take any action with respect to those violations because neither party sought any relief from the

---

[18] The Pretrial Scheduling Order provides: "The absence of a protective order entered by the Court will not be a basis for withholding discovery or disclosures. If any document or information responsive to discovery served in this case is deemed confidential by the producing party and the parties are waiting for the Court to enter a protective order, the document shall be marked 'Confidential' or with some other Confidential designation (such as 'Confidential - Outside Attorneys Eyes Only') by the producing party and disclosure of the Confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s)." (Dkt. 24 at 9.)

Court.  Alexander and 1328 Uptown are reminded, however, of their obligation to comply with the Court's orders and the Local Rules.

## IV.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. The Fortney Entities' Motion to Quash Depositions and for Protective Order (Dkt. 38) is **GRANTED IN PART** and **DENIED IN PART** as set forth below.

   a. Alexander may depose Eric Fortney, Marc Fortney, Carol Fortney, and Mary Lin Wershofen in La Crosse, Wisconsin, or at another location mutually agreeable to the parties.  Alexander may not depose Ronald Fortney without obtaining leave of Court.

   b. The Fortney Entities must serve responses to Interrogatory Nos. 7, 21, and 27 as set forth above within 14 days of the date of this Order.  The Fortney Entities need not serve responses to Interrogatory Nos. 4-6, 8, 9-20, 22-25, and 28-30.

   c. The Fortney Entities need not produce documents in response to Request for Production Nos. 2, 5-30, and 32 beyond those already produced (if any).

   d. The Fortney Entities must serve responses to Request for Admission Nos. 1-14 within 14 days of the date of this Order to the extent the requests are capable of separation into distinct components and follow a logical or chronological order.

2. 1328 Uptown, Inc.'s Motion for Protective Order (Dkt. 53) is **GRANTED IN PART** and **DENIED IN PART** as set forth below.

   a. 1328 Uptown must serve responses to Interrogatory Nos. 28 and 31 within 14 days of the date of this Order.  1328 Uptown need not serve responses to Interrogatory Nos. 25-27, 29-30, and 32-35.

   b. 1328 Uptown need not produce documents in response to Request for Production Nos. 1, 12, 18, and 27-44 beyond those already produced (if any).

      c.  1328 Uptown must serve responses to Request for Admission Nos. 2, 5, 7, 9, and 13-16 within 14 days of the date of this Order to the extent the requests are capable of separation into distinct components and follow a logical or chronological order.

3.  Alexander's Motion to Compel (Dkt. 59) is **GRANTED IN PART** and

    **DENIED IN PART** consistent with the Paragraphs 1 and 2 of this Order.


DATED: October 7, 2019                *s/Elizabeth Cowan Wright*
                                      ELIZABETH COWAN WRIGHT
                                      United States Magistrate Judge